SHIMOLA, Appellant,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *Shimola v. Cleveland* (1989), 65 Ohio App.3d 457.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55667.

Decided Dec. 4, 1989.

*Steven D. Jones* and *William T. Wuliger*, for appellant.

*Marilyn G. Zack*, Director of Law, and *Janet E. Burney*, Assistant Director of Law, for appellees.

JAMES L. McCRYSTAL, Judge.

Appellant, Charles Shimola, brought suit against the National Broadcasting Company, WKYC, the Ohio Bell Telephone Company, and appellees, the city of Cleveland, Councilwoman Barbara Pringle, and Director of Public Service Joseph Stamps.[1] In 1986, summary judgment was granted for appellees on six of the ten claims.[2]

The judgments on count two and seven for Cleveland and Pringle are before this court.[3] Count two alleged that Cleveland and Pringle's demolition without notice of appellant's house was a trespass, conversion, fraud, malicious destruction of property, and a violation of due process. Count seven alleged that Pringle defamed appellant.

---

1. Shimola had brought the same suit in district court. All the claims were dismissed for want of a federal question. The Sixth Circuit sent back the federal cause of action concerning demolition without notice. District court granted summary judgment for defendant; appellant failed to state a *federal* cause of action for demolition without notice and the ordinance was not unconstitutional. The Sixth Circuit affirmed.

2. The complaint contained nine counts and a claim against the appellees for conspiracy which was alleged in the facts portion of the complaint. Counts one and three concerned the constitutionality of the ordinance. Counts four and five were against Ohio Bell only and count eight was against NBC and WKYC only. Ohio Bell, the National Broadcasting Company and WKYC were dismissed. Leave to file an amended complaint was granted but then denied.

   The motion addressed the demolition, the authority of the parties, and whether appellant alleged that the statements of Pringle concerned appellant. The motion stated there was no conspiracy but did not address the abuse of process claim (count six) or the counterclaim. Thus, summary judgment for appellees was entered only on counts one, two (demolition without notice), three, seven (defamation) and nine (breach of fiduciary duty) and on the claim for conspiracy. A previous appeal of the summary judgment resulted in a remand because the abuse of process claim and a counterclaim remained. *Shimola v. Cleveland* (Apr. 4, 1988), Cuyahoga App. No. 53574, unreported, 1988 WL 35279. The journal entry has been amended to indicate that there is no just reason for delay.

3. Appellant withdrew any challenge of the judgment on counts one and three. Stamps was not named in counts one through nine and appellant fails to argue that summary judgment was improper on the conspiracy claim in which Stamps was named. Accordingly, this court's review will only concern Cleveland and Pringle. Appellant argues only that summary judgment was improper regarding demolition without notice and defamation and does not challenge judgment on the breach of fiduciary duty claim or the conspiracy claim.

Pringle had legislation passed in Cleveland City Council to allow appellant to move a house to 320 South Ridge Drive. He first moved the house to a state-owned lot. In April 1980, there was a fire in the house and it was declared a public nuisance. A notice of violation of the building ordinances was sent to appellant which directed him to either raze it or secure permits to repair it. In appellant's deposition he stated that he secured a permit and complied by the deadline. Appellees present no evidence to the contrary.

On August 21, 1980, the house was relocated to 320 South Ridge Drive. WKYC reported that evening that the house had been relocated and also interviewed Pringle. Late that night or early on August 22, 1980 another fire occurred. Charles Leanza, assistant commissioner of Cleveland's Division of Building, and City Inspector Louis Woodward inspected the premises. The roof had been removed for the move. The inspection found no violations and appellant was issued a permit to repair minor fire damage.

A third fire occurred in the early hours of August 23, 1980. That day Pringle informed Leanza who called Lisa Thomas, head of the Bureau of Demolition, Willibald L. Pelsoci, Division of Building Consulting Engineer, and Warner Thomas, Senior Engineering Draftsman and Photographer. Leanza instructed Thomas to have Pelsoci inspect the house and, if necessary, have it demolished. The same day Pelsoci told Thomas that the house should be demolished immediately. At Thomas's direction the demolition occurred that afternoon.

Appellant raises five assignments of error.[4]

## I

"The trial court erred in granting summary judgment on the issue of demolition without notice.

"A. A genuine issue of material fact existed on the question of whether an emergency existed."

In cases of emergency, as determined by the Commissioner of Buildings, the commissioner shall make a structure safe or have it removed. Section 3103.08(g) of the Cleveland Building Code. Thirty days' notice is required in non-emergency situations but "in cases of emergency as set forth in subsection (g) hereof, less than 30 days notice may be given." Section 3103.08(f) of the Cleveland Building Code.

---

4. Appellant withdrew Assignment of Error No. V of the original six when he filed his reply brief.

This court has determined later in this opinion that some notice is always required and that Pelsoci did not have the authority to determine that there was an emergency. Appellees admit that no notice was even attempted. However, in compliance with App.R. 12, this point will be addressed.

The condition of the building before the third fire is irrelevant. No violations existed as of the inspection after the second fire. Before the demolition the assistant commissioner did not see the house, view photographs of it, or speak to his staff after the last inspection of the house. An emergency must involve an immediate danger to human life or health in the opinion of the commissioner, Section 3103.08(g), or his deputy, Section 3103.-01(b). The commissioner was not involved. His assistant did not make the decision. Pelsoci did.

Even if Pelsoci had the authority there is a genuine issue of material fact remaining. Pelsoci stated that the house was not structurally sound and was in danger of caving in. The mover stated that the house was structurally sound and demolition was unnecessary. Appellees question the mover's affidavit by pointing out that the mover did not see the house after the third fire. (In the absence of any notice there was no opportunity.) The mover did say that he had carefully reviewed Pelsoci's deposition and the photographs that appellees relied on in their motion. The mover's opinion can be challenged at trial but his opinion is proper even if based on other items in evidence.

Clearly there is a genuine issue of material fact as to whether or not there was an emergency.

"B. A genuine issue of material fact existed on whether less drastic means could have been employed."

"Anyone who destroys or injures private property in abating * * * a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing. * * *

"[W]hen sued by the owner, *the one destroying the property may be held liable* * * * *unless he* alleges and *proves* and the trier of facts finds *that what he destroyed was a public nuisance* and that *its destruction was reasonably necessary for abatement* of that nuisance." (Emphasis added.) *Solly v. Toledo* (1966), 7 Ohio St.2d 16, 36 O.O.2d 9, 218 N.E.2d 463, paragraphs three and four of the syllabus. Here, there was no previous judicial determination or hearing. The investigative report of August 25, 1980 (after the third fire) states that the house "is past the point of economical and

sensible repair." This is the only reference in appellees' materials to the possibility of repair instead of demolition.

Even in an emergency, Section 3103.08 requires that the commissioner shall make safe *or* remove the building or structure. Even if the building were a nuisance and an emergency was established, appellees must show that the nuisance could not be abated by measures other than demolition.

Appellees presented no evidence to show that demolition was reasonably necessary to abate the nuisance. There is a genuine issue of material fact concerning whether or not the house was structurally sound. Appellees do not show that a fence or a guard would not have kept children from the danger appellees feared or that no other measures were possible. An opinion that further repair would not be economical or sensible does not state that repair or other measures would not have abated the nuisance.

"C. The demolition was unlawful when no prior notice was given."

In extraordinary situations, it is possible for the state to deprive another of property without notice and due process. *Fuentes v. Shevin* (1972), 407 U.S. 67, 90–91, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 572–573. However, Cleveland restricted its power by passing an ordinance which requires notice.

Since 1973 the ordinance has required the following notice:

"The Commissioner [of Building] shall further give written notice informing the owner or agent, mortgagee of record, and lien holders of record of the City's intention to repair or rehabilitate or demolish and remove the unsafe building or structure, at least 30 days *prior to* such intended action by the City. However, *in cases of emergency* as set forth in subsection (g) hereof, *less than 30 days notice may be given.*" (Emphasis added.) Section 3103.-08(f).

The language does not mean that in an emergency "[anything from 29 days to *zero* ] days notice may be given." This construction is not reasonable. If the council meant that in an emergency action may be taken on less than thirty days' notice *or* on no notice, it did not say so. "Even though such prompt action is taken because of the *emergent* nature of the danger, some notice is required by the ordinance to be given * * *." *Superior Savings Assn. v. Cleveland* (N.D.Ohio 1980), 501 F.Supp. 1244 (construing Section 3103.08[f] ).[5]

---

5. *Superior* acknowledged that it has been held that in an emergency the state may demolish property without notice to the owner, *id.* at 1249, *citing Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, but stated that it was not necessary to determine whether or not there was an emergency because Cleveland must observe its own regulations and some notice is required under Section 3103.08(f) even in an emergency. *Id.* at 1249–1250.

"D. The demolition was unlawful when it was ordered by a city official without the authority to do so."

The Commissioner of Building (now Building and Housing) determines an emergency and orders a demolition. Section 3103.08(g). The commissioner shall designate as his deputy a qualified employee in the division who shall exercise all the powers of the commissioner during his absence or disability. Section 3103.01(b). Pelsoci, the structural engineer, was not designated as a representative of the commissioner or vested with the authority to determine if an emergency existed.

When "an administrative officer is directed or empowered to perform duties or exercise authority it shall be interpreted to mean such administrative officer or his duly authorized representative or inspector." Section 3103.01(f).

Section 3103.01(f) is a general provision of authority. Section 3103.08(g) is a specific proscription of authority. Only the Commissioner or his deputy may determine an emergency. Pelsoci, not the assistant commissioner, declared the emergency and he did not have the authority to do so.

## II

"The trial court erred in granting summary judgment for Pringle when her statements were sufficient 'of and concerning' appellant."

The motion argued that the complaint failed to claim that Pringle mentioned appellant's name or that the statements were "of" him. The complaint alleged that Pringle made false statements that held *the Plaintiff* up to public scorn and ridicule * * * [and] defamed and slandered *the Plaintiff* * * * with reckless disregard of the truth." (Emphasis added.) She need not mention his name. It is sufficient that a person who hears the statement would know that she is speaking of appellant. In the broadcast, Pringle was introduced after the reporter explained that a house had been moved to South Ridge Drive. She then stated:

"The house was moved and dumped on Schaaf Road. * * * I was told by the Building Department, I read the violations which are a mile long that even if the house is able to be moved it should automatically be brought up to code before it was allowed to be moved, but they didn't do that. *They* parked the house over here and plus *they* took a lot they weren't supposed to use. *They* just broke every law. *They* vandalized a man's car trying to get in the, it this afternoon and *they* had someone with a baseball bat and a gun just irritating the neighbors." (Emphasis added.)

The use of "they" does not alter the fact that Pringle was clearly speaking of the party or parties responsible for suing over the move and for moving the house. It would be apparent to many that the party was appellant.

The trial court improperly entered summary judgment for Cleveland and Pringle on count two and for Pringle on count seven. The decision of the trial court is reversed and remanded.

*Judgment reversed*
*and cause remanded.*

NAHRA, P.J., and HOFSTETTER, J., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, and JAMES L. MCCRYSTAL, J., retired, of the Erie County Common Pleas Court, sitting by assignment.