SHIMOLA, Appellee and Cross–Appellant; Appellant,

v.

CITY OF CLEVELAND, Appellant and Cross–Appellee; Pringle, Appellee.

[Cite as *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60923, 60928 and 61187.

Decided June 18, 1992.

*Wuliger, Fadel & Beyer* and *Steven D. Jones,* for appellee and cross-appellant in case Nos. 60923 and 61187 and appellant in case No. 60928.

*Danny R. Williams,* Director of Law, and *Paul A. Janis,* Assistant Director of Law, for appellant and cross-appellee in case Nos. 60923 and 61187.

HARPER, Judge.

Plaintiff-appellant, Charles D. Shimola, commenced an action against a number of defendants on August 17, 1981 based upon the August 23, 1980 demolition of a house by the city of Cleveland ("the city").[1] The complaint included nine counts and a conspiracy claim which was set forth in the facts portion of the complaint. The trial court later granted summary judgment in favor of defendants on six of

---

1. The same suit was filed in the United States District Court on April 14, 1981. The complaint was dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a federal claim. The Sixth Circuit Court of Appeals remanded the cause of action concerning the issue of demolition without notice. The district court thereafter granted summary judgment for the defendants and the Sixth Circuit affirmed that ruling.

the claims in 1986: counts one and two (demolition of property without notice); counts three and seven (defamation); count nine (breach of fiduciary duty); and the conspiracy claim. Shimola appealed the trial court's order but this court was without jurisdiction to review it pursuant to Civ.R. 54(B). See *Shimola v. Cleveland* (Apr. 4, 1988), Cuyahoga App. No. 53574, unreported, 1988 WL 35279. In a subsequent appeal, this court reversed and remanded the action. We concluded that the trial court erred in granting summary judgment in favor of the city on the demolition without notice claim (count two) and in favor of Barbara Pringle, then councilwoman for the city, on the defamation claim (count seven). See *Shimola v. Cleveland* (1989), 65 Ohio App.3d 457, 584 N.E.2d 774.

On October 17, 1990, the case proceeded to trial on these two issues, whether the city violated state tort law and the due process clause of the Fourteenth Amendment to the United States Constitution by destroying Shimola's property without notice, without opportunity to contest the demolition, and without compensation. The issue of the city's liability was decided by directed verdict in favor of Shimola. The jury subsequently returned verdicts in favor of Pringle on the defamation claim but against the city in the amount of $72,500 on the demolition without notice claim.

Several post-trial motions were filed by the parties. The city filed a "Motion to Deduct Benefits From Collateral Sources" pursuant to R.C. 2744.05(B) on October 26, 1990. The trial court overruled this motion on December 18, 1990. Shimola filed a motion for prejudgment interest on October 29, 1990, said motion being granted on December 19, 1990 after an evidentiary hearing. Shimola also filed a motion for the imposition of costs which was granted by the trial court on December 17, 1990.

The city now appeals from the initial judgment and the award of prejudgment interest. Shimola appeals from the judgment rendered in favor of Pringle. These appeals are consolidated for hearing, review and disposition. A careful review of the record compels affirmance.

I

In 1979, the state of Ohio sold two houses to Shimola by sealed bid. The state originally purchased the houses to clear the path for construction of Interstate 480. Shimola purchased one house at 4939 West 13th Street for $25 and another house at 4959 West 13th Street for $111 ("the green house"). Shimola purchased two parcels of land in the city of Cleveland for the relocation of the houses. These parcels were located at 320 South Ridge Drive and 4833 West 14th Street.

Shimola soon after learned that City of Cleveland Codified Ordinance Section 183.11 prohibited the relocation within the city of any dwelling which was

purchased to facilitate the construction of any freeway if the relocation required the use of city streets. Shimola sought the assistance of his councilwoman, Pringle, to introduce special legislation that would except him from the ordinance. After an inspection of the houses and the property, Pringle introduced the legislation in council. Council unanimously passed the legislation on February 11, 1980, enabling Shimola to obtain a relocation permit.

Shimola's attempt to obtain the permit, however, was hindered when one-time defendant, Joseph Stamps, then the Director of City Services, refused to issue the permit. The refusal stemmed from Pringle's desire that the green house be relocated to the lot on South Ridge Drive rather than the lot it was originally intended to be relocated to, the West 14th Street lot. Permits were eventually issued on March 26, 1980 at which time neither structure sustained any damage.

In April, the green house was moved to a state-owned lot at 475 West Schaff Road. A fire occurred at the house on or about April 24, 1980. The city building inspector, Louis Woodard, inspected and condemned the house the following day. The house sustained minor and repairable fire damage. Shimola received permission to relocate the green house to South Ridge Road and was further directed to repair the fire damage within six months. The house remained on West Schaff Road until August 19, 1980.

Shimola's mover, Mural & Son, Inc. ("Mural"), successfully relocated the house to its South Ridge lot on August 21, 1980. In preparation for the move, the windows of the house were boarded up and the roof was lowered by detaching it and turning it upside down, to allow passage under electrical wires. The house was placed on two steel beams over an excavation since there was no foundation. A news report that same day recounted how the house arrived at its new location. Doug Adair, then anchorman for NBC affiliate WKYC–TV Channel 3, in his report, interviewed Pringle. Pringle's attitude toward the relocation of the houses changed in light of the receipt of complaints by her constituents.

During the night of August 21, vandals set the house on fire. Inspector Woodard arrived at the site the next day along with Assistant Commissioner of the Division of Buildings, Charles Leanza, Shimola and a representative of Mural. An inspection of the house revealed that it was structurally sound and repairable. A report by the city's fire department estimated damage at $250. A permit to replace the roof was obtained that day, August 22. Unfortunately, another fire occurred at the house that night. The Cleveland Fire Department estimated this damage at $2,000. On August 23, Pringle contacted Leanza who then discussed the green house situation with the head of the Bureau of Demolition, Lisa Thomas; the Consulting Engineer for the Division of Building, Willibald Pelsoci; and a Senior Engineering Draftsman and Photographer, Warner Thomas. Pelsoci inspected the house and found that the structure was extensively damaged, was

in danger of imminent collapse and had neither a roof nor a foundation. His conclusion was that the structure should be razed immediately. This conclusion coincided with Pringle's demand that the house be razed.

The green house was thus demolished pursuant to Cleveland Codified Ordinance 3103.08 on August 23, 1980 after Pelsoci contacted Lisa Thomas and Warner Thomas photographed it. The demolition was completed by B & B Wrecking & Excavating Company, the city's subcontractor. Shimola was out of town that day and received no prior notice of the city's intention to demolish the house.

## II

For its first assignment of error, the city contends that:

"The trial court erred in permitting inadmissible evidence to be presented at trial which had a prejudicial effect on the jury."

The city charges that the trial court improperly allowed a line of questioning which dealt with a mandamus action filed against the city by Shimola and settled in 1980. Shimola sought a court order directing the city to issue certain permits to him in that action. The city argues that the testimony concerning the mandamus action and settlement negotiations was inadmissible pursuant to Evid.R. 402,[2] 408[3] and 501[4] and denied it a fair trial because the testimony was

---

2. Evid.R. 402 provides in pertinent part:

"All relevant evidence is admissible * * *. Evidence which is not relevant is not admissible."

Evid.R. 403 provides:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

3. Evid.R. 408, provides:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not admissible to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." (Emphasis added.)

4. Evid.R. 501 provides:

meant to "shock and enrage the jury with the supposedly improper settlement posture of the City, and the supposedly· ulterior political motives of" Pringle.

 The trial court has broad discretion in the admission and exclusion of evidence under Evid.R. 403, exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 400–401, 473 N.E.2d 768, 791. The trial court must determine whether the probative value of certain evidence and/or testimony is substantially outweighed by the danger of unfair prejudice, or of confusing or misleading the jury. See *State v. Lyles* (1989), 42 Ohio St.3d 98, 537 N.E.2d 221.

 Applying the above-cited rules, this court finds that the trial court did not abuse its discretion in admitting the testimony of the mandamus action and of Pringle. Evid.R. 408 is meant to exclude offers to compromise and of compromises to prove the liability for, or invalidity of, the claim or its amount when liability, invalidity or the amount is at issue. The exclusion does not apply when the evidence is presented for a purpose other than proving liability, invalidity, or the amount of the claim. See *Cannell v. Rhodes* (1986), 31 Ohio App.3d 183, 31 OBR 349, 509 N.E.2d 963; *Marszal v. Ameritrust* (Oct. 27, 1983), Cuyahoga App. No. 46496, unreported, 1983 WL 2697; Staff Note to Evid.R. 408. The evidence concerning the mandamus action and of the compromise between the parties which allowed Shimola to relocate his houses to the city was introduced for reasons other than proving liability, invalidity or the amount of his claims of demolition without notice and defamation. The testimony outlines the history of the green house's move to its new location. Moreover, we find that the city was not prejudiced by the admission of this evidence. ·

Appellant's first assignment of error is without merit and is overruled.

### III

The city, in its second assignment of error, asserts that:

"The trial court erred in directing a verdict against the city."

The city contends that the trial court erred in directing a verdict in favor of Shimola as to its liability on the issue of whether the city failed to adequately notify Shimola of the demolition. The city supports this contention by referring to the common law defense of emergency and of impossibility.

---

"The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience."

This court in *Shimola v. Cleveland, supra,* 65 Ohio App.3d 457, 584 N.E.2d 774, remanded the action to the trial court, finding that the court erred in entering summary judgment in favor of the city on the issue of demolition without notice. We stated, that " '[e]ven though * * * prompt action is taken because of the *emergent* nature of the danger, some notice is required by the ordinance to be given * * *.' " (Emphasis *sic.*) *Id.,* 65 Ohio App.3d at 461, 584 N.E.2d at 777. Therefore, even under emergency situations, the city could not demolish property without notice. In addition, another portion of our opinion addresses the authority of individuals to declare an emergency situation warranting demolition:

"The Commissioner of Building (now Building and Housing) determines an emergency and orders a demolition. Section 3103.08(g). The commissioner shall designate as his deputy a qualified employee in the division who shall exercise all the powers of the commissioner during his absence or disability. Section 3103.01(b). Pelsoci, the structural engineer, was not designated as a representative of the commissioner or vested with the authority to determine if an emergency existed.

" * * *

"Section 3103.01(f) is a general provision of authority. Section 3103.08(g) is a specific proscription of authority. Only the commissioner or his deputy may determine an emergency. Pelsoci, not the assistant commissioner, declared the emergency and *he did not have the authority to do so.*" (Emphasis added.) *Id.,* 65 Ohio App.3d at 462, 584 N.E.2d at 778.

The issue of whether the city legally demolished Shimola's house without giving him notice based on the defense of emergency is, therefore, not even an issue here. Since Pelsoci did not have the authority to determine that an emergency existed, the city cannot rely on this theory as justification for demolishing the house without notice. Moreover, assuming *arguendo* Pelsoci had such power, some notice, as stated *supra,* is required and it is uncontested that Shimola was not provided that notice. The trial court thus did not err in granting a directed verdict in favor of Shimola.

Appellant's second assignment of error is overruled.

## IV

The city avers in its third and fourth assignments of error that:

"III. The trial court erred in improperly instructing the jury on the legal standard to be applied to measure plaintiff's damages.

"IV. The trial court erred in failing to instruct the jury in the proper consideration of speculative damages."

In these two interrelated assignments of error, the city maintains that the trial court erred in its instructions to the jury in two respects. First, the city claims that the trial court erred in instructing the jury as to the measure of Shimola's damages by citing the rule found in *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 28 O.O. 470, 56 N.E.2d 164. The city argues that the proper rule of damages is found in *Superior Savings Assn. v. Cleveland* (N.D.Ohio 1980), 501 F.Supp. 1244, 1250–1251, that being the difference in the value of the property immediately before the demolition and the value immediately after the demolition. Second, the city asserts that the jury was improperly permitted to award compensation for damages which were speculative based upon the court's charge to the jury.

The city made no objections to the trial court's charge to the jury. In addition, the trial court provided an opportunity for counsel to express any objections to the jury charge before the jury retired to consider its verdict. Counsel chose not to do so.

■ Civ.R. 51(A) states in pertinent part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection."

The Supreme Court of Ohio in *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, held that:

"When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." *Id.*, paragraph one of the syllabus.

Therefore, a party's failure to object to the court's instructions operates as a waiver for purposes of appellate review. Such is the case in the present appeal.

Moreover, this court finds that no plain error resulted to the prejudice of the city due to the instructions given to the jury.

Appellant's third and fourth assignments of error are overruled.

## V

In its fifth assignment of error, the city contends that:

"The trial court erred in permitting misconduct of plaintiff and plaintiff's counsel to such an extent that the jury's verdict was influenced by passion and prejudice, thereby denying defendant a fair trial."

The city assigns as error Shimola's and his counsel's "pattern of relentless misconduct which was patently prejudicial to the City." The city argues that the misconduct "poisoned the minds of the jury" and that the excessive verdict demonstrates the presence of passion and prejudice. Specifically, it refers to comments in relation to the discovery process, such as the city purposely failed to provide certain documents to Shimola; the calling of the city's law director as a witness when he was not listed on the witness list; the intentional humiliation of a defense witness by insinuating the witness had ties to Nazism; Shimola's testimony that he hired a lobbyist to "take care" of the permits as being an insinuation that a bribe occurred; Shimola's disrespect for the judicial process by his uncooperative and opinionated testimony; and Shimola's counsel's comments that certain defendants ordered the destruction of Shimola's house as a matter of political expediency and without cause. The city argues that all of these matters combined to deny it a fair trial.

An appellate court cannot disturb a jury's assessment of damages unless the award lacks support from any competent, credible evidence or resulted from passion or prejudice. *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 10 OBR 129, 460 N.E.2d 701. Whether a jury's award should be set aside requires a review of the record to determine if the " ' "damages * * * were induced by (a) admission of incompetent evidence, or (b) by misconduct on the part of the court or counsel, or (c) whether the record discloses any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in its determination of the amount of damages that should be awarded." ' " *Loudy v. Faries* (1985), 22 Ohio App.3d 17, 19, 22 OBR 52, 54, 488 N.E.2d 235, 237, quoting *Hughes v. Laurence* (Nov. 12, 1981), Summit App. No. 10211, unreported, at 3–4, 1981 WL 4238.

In the instant case, it is initially noted that the city allowed a vast amount of this now challenged testimony to be offered without objection. Generally, when a party fails to object to the introduction of evidence, the party waives the right to assign as error the introduction of the evidence. Nevertheless, the city failed to demonstrate any improper influence that induced passion or prejudice. There was sufficient competent, credible evidence to support the jury award to compensate Shimola for his property that was wrongfully converted by the city and for damages suffered as a result of the city's actions. Shimola testified that if he had the opportunity to renovate the house as planned, it would have been worth approximately $65,000 to him. This figure represents the value of the house itself, $90,000, minus $15,000 in construction costs and $10,000 in land costs. Shimola also testified that he expended the following funds for the project: $110 or $25 for the house itself; a total of $5,200 for the removal of telephone and electrical wires; $13,300 in moving costs; $3,500 for costs in

attaining the necessary legislation; $1,100 in labor costs; and $1,050 for costs in attaining the necessary permits. He further offered that over the ten-year period between 1980 and 1990, he would have collected $68,400 in rental income.

Appellant's fifth assignment of error is accordingly overruled.

## VI

The city, in its sixth assignment of error, asserts that:

"The trial court erred and abused its discretion in failing to deduct from the verdict the benefits received by plaintiff from collateral sources, pursuant to R.C. 2744.05(B)."

R.C. 2744.05(B) deals with the deduction of collateral sources from a jury award. In *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154, the Ohio Supreme Court stated in the syllabus that:

"Section 28, Article II of the Ohio Constitution prohibits the legislature from retroactively applying laws that affect substantive rights. Therefore, the application of R.C. 2744.05(B) to causes of action arising before November 20, 1985, the effective date of the statute, is unconstitutional. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraphs one and three of the syllabus, followed.)"; see, also, *Thomas v. East Cleveland* (1989), 61 Ohio App.3d 75, 572 N.E.2d 166.

R.C. 2744.05(B) became effective on November 20, 1985. The cause of action in the case *sub judice* arose on August 23, 1980. The trial court thus properly refused to deduct any collateral sources from the jury's award since the cause of action arose prior to the effective date of the statute. See *Stavrou v. Cleveland* (Oct. 10, 1991), Cuyahoga App. No. 59051, unreported, 1991 WL 204974.

Appellant's sixth assignment of error is overruled.

## VII

For its seventh assignment of error, the city asserts that:

"The trial court erred and abused its discretion in granting the plaintiff's motion for pre-judgment interest."

In a two-part argument, the city contends that the trial court erred in awarding prejudgment interest to Shimola. First, the city claims that it had a good-faith, objective reasonable belief it had no liability. Second, it claims that it made a reasonable settlement offer and argues that the trial court erred in not determining whether there was a good-faith effort to settle the case.

Prejudgment interest is provided for in R.C. 1343.03(C), which provides as follows:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The Ohio Supreme Court in *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus, set forth the following standard for determining when to award prejudgment interest:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

The court further stated at 159, 25 OBR at 203, 495 N.E.2d at 574:

"The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83 [19 OBR 123, 482 N.E.2d 1248]. This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion."

The term "abuse of discretion" means more than an error of law or of judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Huffman, supra; Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In the instant case, the trial court did not abuse its discretion in awarding prejudgment interest to Shimola as alleged by the city. The court properly held a hearing and heard competent, credible evidence to substantiate the award.

In *Shimola, supra,* 65 Ohio App.3d at 461, 584 N.E.2d at 777, we acknowledged that the state could deprive another of property without notice and due process in extraordinary situations. *Fuentes v. Shevin* (1972), 407 U.S. 67, 90–91, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556, 557–558. However, we indicated that the city

restricted its power by passing an ordinance which requires notice even in emergency situations. Any other construction was deemed unreasonable. The city argues that it was unaware of its misinterpretation of its own ordinance prior to our 1989 decision and it should not, therefore, be punished for any pre–1989 actions. The city cannot now argue that it had a good-faith, reasonable belief that it had no liability by relying on our decision. The ordinance with regard to notice is explicit; the city's misinterpretation of it in 1981 was just as unreasonable as it was in 1989.

The hearing on the city's motion for prejudgment interest, pursuant to R.C. 1343.03(C), was held on December 7, 1990. Roger Kleinman attended several pretrials on behalf of Shimola. He testified that Shimola was interested in settling the case for between $20,000 and $40,000 but there was never an indication by the city that settlement was a possible alternative in these pretrials. Shimola's counsel, William Wuliger, narrated the discovery process. He testified that on December 14, 1981, the city was served with interrogatories and then a request for documents on December 18, 1981. The city responded to the document request but provided no documents; the interrogatories were answered on February 8, 1982. The city furthermore provided no witness list. Shimola, therefore, was not aware of who the city was going to present as an expert or who was responsible for deciding the fate of the green house. A second request for documents was forwarded to the city on March 17, 1982. The city once again responded but without the provision of the documents. Finally, in November of 1985, Shimola moved for sanctions due to the city's non-cooperative stance. The city responded by filing a motion for summary judgment in May 1986. The trial court granted this motion for summary judgment and this court reversed and remanded the action. Shimola renewed his document request on February 14, 1990, which ultimately resulted in another motion to compel. The city was also hesitant to allow Shimola to depose its expert, and then filed a motion for protective order after revealing his identity. The only offer made to Shimola was in April 1990 when the city offered a settlement figure of $1,000. At the time of trial, this offer was increased to $7,500. Shimola, on the other hand, presented a settlement figure of $100,000 at the time of trial, an increase from his initial offer of between $20,000 and $40,000, and was willing to accept $65,000.

Perhaps the most telling misinterpretation of R.C. 1343.03(C) occurred when the city's counsel, Paul Janis, posed a continuing objection to testimony in regard to discovery as he thought, "discovery has nothing to do with" the prejudgment interest issue. The city is directed to the opinion of *Kalain, supra,* where it is stated that a party's reaction to discovery efforts demonstrates whether the party has made a good-faith effort to settle the case.

Accordingly, the city's seventh assignment of error is overruled.

## VIII

Shimola, in a cross-assignment of error, asserts that:

"The trial court erred in overruling appellee's pretrial motion for partial summary judgment as to the issue of liability."

Shimola avers that it is necessary for him to set forth one assignment of error "solely for the purpose of preventing a reversal of the judgment under review." He cites R.C. 2505.22 as providing such a mechanism, said statute providing in pertinent part:

"In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part. * * *"

If this court finds that an appellant's assignment of error has merit, we will address a cross-assignment of error of the appellee. *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 2 OBR 704, 443 N.E.2d 184. Here, we found that the city's assignments of error regarding the issues posed under Shimola's cross-assignment of error were without merit. Hence, we do not address Shimola's cross-assignment of error.

Shimola's cross-assignment of error is thus overruled.

## IX

Shimola, in his appeal, complains in his sole assignment of error that:

"The trial court erred in its instructions relative to the defamation claim against cross-appellee [*sic*] Pringle."

Shimola contends that the trial court "unduly circumscribed the scope of the jury's deliberations by indicating that the only defamatory statements for their consideration were those uttered by Pringle" during a news broadcast. He refers to evidence that Pringle also engaged in more private defamatory conduct when she telephoned Leanza and demanded that the green house be demolished because it posed an immediate danger to the community. Shimola thus argues that the trial court should have allowed the jury to use this conversation to determine the outcome of the defamation claim.

Shimola's counsel stated, "One thing," when after the trial court gave its charge to the jury, the court asked, "is there anything by way of addition to, subtraction from, or amendment to the charge as given." A discussion was then had between court and counsel outside the hearing of the jury and off the record. However, counsel failed to object to the court's charge before the jury retired to consider its verdict. If counsel intended his "one thing" statement to amount to

an objection, he clearly had an opportunity to place that objection in the record and should have done so considering the conversation with the court was off the record. This court cannot and will not read the minds of counsel. A party's failure to object to the court's instructions operates as a waiver for purposes of appellate review. Civ.R. 51(A); *Schade, supra.*

Moreover, we find that no plain error resulted to the prejudice of Shimola due to the instructions given to the jury.

Shimola's assignment of error is thus overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY, P.J., and SPELLACY, J., concur.