DECISION AND JUDGMENT ENTRY
This appeal stems from the sale of a recreational vehicle and its subsequently discovered defects. Plaintiff-Appellant Donald W. Knox appeals from the judgment of the Ross County Court of Common Pleas, which awarded him $8,574 in damages. The trial court found that Defendants-Appellees Norman Ludwick, d.b.a. Sherwood Auto Camper Sales, and Coachmen Recreational Vehicle Company violated the Ohio Consumer Sales Practices Act. R.C. 1345.01 et seq. The trial court specifically found that appellees violated R.C. 1345.02(B)(1), (2), and (10) by misleading appellant to believe the recreational vehicle came with a five-year, unconditional warranty, and by failing to incorporate all material statements and representations into the sales agreement.
In an attempt to establish that the amount of damages awarded were inadequate, appellant makes several arguments. We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 The Sale and Defects
In March 1996, appellant entered into a contract with appellees for the purchase of a 1996 Catalina Coachmen 220RK (the Catalina). The Catalina is a self-contained recreational vehicle. The Catalina purchased by appellant had a full bathroom, kitchen, dining area, and sleeping areas. The Catalina also had, amongst other items, a hot-water tank, a dinette that converted into a bed, and a couch.
While attempting to sell the Catalina to appellant, a salesperson for appellees, Thomas Burns, told appellant that the Catalina came with an unconditional five-year warranty. The purchase price for the Catalina was $47,900, a portion of which appellant financed through Bank One of Portsmouth.
The day after he purchased the Catalina, appellant reviewed the written warranty information located in the owner's kit found inside the vehicle. The written warranties were substantially different from those explained to appellant prior to the sale. The written warranties consisted of: 1) a one-year unlimited warranty; 2) a two-year extended structural warranty; 3) a three-year chassis warranty; and, 4) a five-year emissions warranty.
Appellant did not complain about the warranty discrepancy to appellees; and during the first year of ownership, appellant drove the Catalina to Florida and back to Ohio three times.
Several defects materialized during the first year appellant owned the Catalina. In May 1996, the dinette, which converts into a bed, began to come apart. Without telling appellees of the problems with the dinette, appellant removed the dinette and remodeled the setting for the dinette into a television stand. Appellant did not notify appellees about the defect in the dinette until after this action was commenced. There was also some difficulty in opening and closing the doors on the Catalina.
In September 1996, appellees performed work on the Catalina, under warranty and with no charge to appellant. Appellees replaced the water pump, an exhaust hanger, doorstops, and repaired a leak in the hot-water tank.
Also in September 1996, the couch began to sag in the middle and the couch cushions began to come apart. Appellant informed appellees of these defects and requested that a replacement couch be ordered and installed. The new couch was to be ordered and installed under the warranty. However, appellant was preparing to leave for Florida at the time he notified appellees of the couch's defects.
Appellees waited until appellant returned from Florida in February 1997 to order the couch. When the couch arrived in March 1997, appellees attempted to contact appellant to inform him of the couch's availability. However, appellant did not receive this information.
While in Florida, appellant noticed water leaking from the Catalina. Apparently, the Catalina's hot-water tank had ruptured. The Catalina's ruptured hot water tank leaked water into the rear storage compartment of the vehicle and caused appellant's tools to rust.
 The Settlement, Case, and Trial Court's Findings
In April 1997, appellant initiated an action against appellees and Bank One. The complaint set forth claims based on breach of warranty and violations of the Ohio Consumer Sales Practices Act.
The trial court scheduled the case to be submitted to a magistrate. But, prior to the hearing before the magistrate, appellant and Bank One entered into a settlement agreement dismissing with prejudice their respective claims against one another. Appellant had discontinued making payments on the note and had surrendered possession of the Catalina to Bank One. Bank One cancelled appellant's note, paid him $3,000 in satisfaction of his claims against the bank, and sold the Catalina at auction.
A three-day hearing was conducted before the magistrate in October 1999. In January 2000, the magistrate filed a decision and journal entry, finding that: 1) appellees had properly performed all the warranty repairs in September 1996; 2) appellees had violated R.C. 1345.02(1), (2), and (10) by misleading appellant to believe that the recreational vehicle came with a five-year warranty, and by failing to incorporate all material statements and representations into the sales agreement; 3) appellees were not fraudulent in their representations to appellant regarding the Catalina's dinette; and, 4) appellants were entitled to damages totaling $8,574.
The trial court adopted and incorporated the magistrate's findings and decision in its order.
 The Appeal
Appellant timely filed his notice of appeal and presents the following assignments of error for our review:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT IS INCORRECT IN FINDING ON PAGE 3 OF IT'S [SIC] JOURNAL ENTRY DATED JULY 31, 2000, IN PARAGRAPH 6 THAT DEFENDANTS PROPERLY PERFORMED ALL WARRANTY REPAIR WORK IN SEPTEMBER OF 1996.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT'S FINDINGS OF DAMAGES ARE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
THIRD ASSIGNMENT OF ERROR:
 OVER THE OBJECTION OF PLAINTIFF'S COUNSEL DURING THE OPENING STATEMENT OF DEFENDANT'S [SIC] COUNSEL; COUNSEL FOR HE [SIC] DEFENDANTS LUDWICK'S SHERWOOD AND COACHMEN RECREATIONAL VEHICLE COMPANY, COMMITTED PREJUDICIAL ERROR IN REFERRING TO PLAINTIFF'S SETTLEMENT WITH THE DEFENDANT, BANK ONE, TO WHICH THE MAGISTRATE REPEATED IN FINDING OF FACT NO. 27. THE TRANSCRIPT DOES NOT SHOW THE OBJECTION.
FOURTH ASSIGNMENT OF ERROR:
 MISCONDUCT OF DEFENDANTS' COUNSEL IN MAKING A FALSE STATEMENT OF FACT IN CLOSING ARGUMENT AND IN DISCUSSING IN CLOSING ARGUMENT PLAINTIFF'S SETTLEMENT WITH THE DEFENDANT BANK ONE WHEN PLAINTIFF HAD NO OPPORTUNITY TO OBJECT OR REBUT THE FALSE STATEMENT AND DEFENDANTS' DISCUSSION OF PLAINTIFF'S SETTLEMENT WITH BANK ONE ALTHOUGH PLAINTIFF REQUESTED FROM THE MAGISTRATE AN OPPORTUNITY TO REBUT THE DEFENDANTS' CLOSING ARGUMENT.
FIFTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT IS INCORRECT IN STATING THAT THE LOGSDON V. GRAHAM FORD CO. 54 O.S. N.D. 336 [SIC] IS INAPPLICABLE TO THE CASE SUB JUDICE.
SIXTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT AND TRYER [SIC] OF FACT FAILED TO APPLY THE PROPER MEASURE OF DAMAGES WHICH WAS RECITED IN PARAGRAPH 10 ON PAGE 4 OF THE COURT'S JOURNAL ENTRY FILED JULY 31, 2000.
I. The Warranty Work of September 1996
In his First Assignment of Error, appellant argues that the trial court's factual finding that appellees properly performed all warranty work in September 1996 was erroneous.
Specifically, appellant argues that this finding was erroneous because the generator on the Catalina was defective and not repaired under warranty in September 1996. Appellant states that this factual finding is significant because it had a deleterious effect on the amount of damages awarded to appellant.
The trial court's finding was based on its own independent review of the record and the magistrate's findings of fact, which the trial court fully adopted and incorporated into its judgment.
Appellant essentially argues that this factual finding was against the manifest weight of the evidence. A judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. See C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. Factual findings of the trial court are to be given a great amount of deference because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276; see, also, Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745.
Appellant's testimony concerning the condition and operation of the generator in September 1996 was that the generator would "run for awhile and then all at once it'd [sic] almost die out and then it'd [sic] kick back on." Appellant also testified that he told the repairperson about the problems with the generator, but that the repairperson could not find anything wrong with the generator. According to appellant, when he left appellees' place of business in September 1996, "the generator was running fine." Further testimony was presented to show that following the repairs made in September 1996, appellant did not contact appellees to inform them of any other problems with the generator.
The Catalina's subsequent owner performed additional repairs after appellant had surrendered the Catalina to Bank One. The subsequent owner, who bought the Catalina at auction, replaced the generator's carburetor. Appellant's witness, Dan Mollette, testified about these repairs made to the Catalina's generator. But, Mollette inspected the Catalina after those repairs had already been performed.
The testimony presented at the hearing shows that the generator was operating properly in September 1996 when appellees inspected the generator. Therefore, some competent and credible evidence supports the trial court's finding that the repairs performed in September 1996 were properly completed. Accordingly, appellant's First Assignment of Error is hereby OVERRULED.
II. Calculation of Damages and Their Adequacy
In his Second and Sixth Assignments of Error, appellant argues that the damages awarded him were inadequate, against the manifest weight of the evidence, and contrary to law. As we have already stated, this Court should not reverse judgments supported by some competent and credible evidence. See C.E. Morris, supra.
According to both parties, the trial court laid out the proper formula for determining damages. The formula for determining damages is found in R.C. 1302.88(B). R.C. 1302.88(B) states that, "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." R.C. 1302.88(B).
Appellant alleges that values used by the trial court in determining damages according to R.C. 1302.88(B) were erroneous.
In calculating the damages, the trial court specifically found that the value of the Catalina with the defects (i.e. broken dinette, couch cushions coming apart, a defective hot water tank, and a door that occasionally stuck) proposed by appellant, $30,000, was not credible or proven. Since determinations of credibility are matters for the trial court to decide, we find that the trial court's finding that the $30,000 value proposed by appellant through his expert witness was not credible is not against the manifest weight of the evidence. See Seasons Coal Co., supra.
The sale price of the Catalina was $47,900. The value of the extended warranty, which was presented to appellant as being included in that price, was $2,208. Accordingly, the value of the Catalina as warranted was properly found to be $50,108. However, appellant's arguments concern the value of the Catalina as accepted.
The trial court found that the value of the Catalina as accepted was $46,675, which is the sale price, $47,900, minus $1,225, the cost of replacement parts.[1] The trial court calculated and found appellant's damages to be $3,433 by subtracting the value of the Catalina as accepted, $46,675, from the value of the Catalina as warranted, $50,108. See R.C. 1302.88(B).
The trial court also found that, because appellant failed to notify appellees concerning the dinette's defects and unilaterally altered it, he was barred from recovering damages for the dinette pursuant to R.C.1302.65(C)(1). See AGF, Inc. v. Great Lakes Heat Treating Co. (1990),51 Ohio St.3d 177, 555 N.E.2d 634. Therefore, the trial court subtracted the cost of the dinette, $575, from the $3,433 (the difference between the value of the Catalina as warranted and the value of the Catalina as accepted) for damages totaling $2,858. The trial court then trebled appellant's damages pursuant to R.C. 1345.09(B), establishing total damages of $8,574.
Appellant states that one of appellees' witnesses, Thomas Fribley, an assistant vice-president for Coachmen Industries, admitted during his testimony that the value of the Catalina as accepted was $33,295. The value of $33,295 was presented by appellant's witness. But, appellant mischaracterizes Fribley's testimony. When placed in context, Fribley's testimony is that the value given by appellant's expert is erroneous and that the value of the Catalina was $48,095. See Grove v. Turman (Mar. 27, 1997), Athens App. No. 96CA1728, unreported.
The trial court's assessment of damages based on the evidence presented was not against the manifest weight of the evidence. The trial court relied on competent and credible testimony to establish the corresponding values used in its calculations of damages. See Shulz v. Hobbs (Nov. 22, 1993), Miami App. No. 92-CA-56, unreported.
Therefore, appellant's Second and Sixth Assignments of Error are OVERRULED.
III. Appellee's Statements Concerning Settlements
In his Third Assignment of Error, appellant argues that appellees' references to the settlement reached between appellant and Bank One in appellees' opening statement and written closing argument were improper. Appellant argues that appellees presented the settlement information in an attempt to establish a setoff amount and show that appellant would receive a windfall if appellant were awarded damages.
Appellant also states that an offer made by appellees to appellant to settle the case for $5,000 was improperly presented to the trial court in closing argument. Appellant argues that the magistrate, as trier of fact, "should not be subjected to such arguments."
The trial court mentioned the settlement reached between appellant and Bank One in its factual findings. But, the trial court apparently did not take the settlement into consideration when calculating the damages, because no setoff amount was granted in favor of appellees.
Also, the trial court appears to have disregarded the statements regarding the settlement offer made by appellees to appellant. Appellees offered $5,000 to appellant in exchange for his dismissal of the action. Damages were granted to appellant in an amount in excess of the settlement amount offered.
Evid.R. 408 is meant to exclude offers to compromise and of compromises to prove the liability for, or invalidity of, the claim or its amount when liability, invalidity or the amount is at issue. The exclusion does not apply when the evidence is presented for a purpose other than proving liability, invalidity, or the amount of the claim.
Shimola v. Cleveland (1992), 89 Ohio App.3d 505, 511, 625 N.E.2d 626,630.
Without addressing the propriety of appellees' presentation of the settlement information, we find this assignment of error to have no merit because appellant has failed to show that he suffered any prejudice resulting from these statements. If any error was committed by the presentation of these statements by appellees, that error was nothing but harmless. Harmless error is defined as "any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61; see, also, Osborne v. Song (June 18, 1993), Scioto App. No. 2068, unreported.
Therefore, appellant's Third Assignment of Error is hereby OVERRULED.
IV. The Dates of the Catalina Inspections
Appellant argues in his Fourth Assignment of Error that appellees' counsel made a false factual statement by stating in closing argument that both Dan Mollette, a witness for appellant, and Thomas Fribley, a witness for appellees, inspected the Catalina on the same date.
In actuality, Mollette inspected the Catalina on August 4, 1998, and Fribley did his inspection on September 21, 1998. Appellant argues that this misstatement damaged the credibility of Mollette's testimony.
We find this misstatement to be immaterial and inconsequential. The fact remains that both Fribley and Mollette inspected the Catalina within a very few months of each other, and both inspections occurred when the Catalina was no longer in appellant's possession.
"If every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation." Dunlop v. United States (1897), 165 U.S. 486, 498, 17 S.Ct. 375, 379; see, also, Bennice v. Bennice (June 13, 1986), Ottawa App. No. OT-85-15, unreported (Handwork, J., concurring). This error is simply harmless. See Osborne, supra.
Therefore, appellant's Fourth Assignment of Error is OVERRULED.
V. Logsdon's Applicability
Appellant argues in his Fifth Assignment of Error that the trial court erred by determining that Logsdon v. Graham Ford Co. (1978),54 Ohio St.2d 336, 376 N.E.2d 1333, was distinguishable and inapplicable to the case sub judice.
In Logsdon, the plaintiff purchased a product from defendant. The product was defective and plaintiff brought a cause of action based on fraud. The Supreme Court of Ohio stated that, because the case involved fraud, it did not need to address whether the plaintiff's failure to notify the defendant of the defects in the product barred the plaintiff from recovery based on a contract theory of breach of warranty. See id. at fn. 1.
Appellant cites Logsdon as authority for his contention that his failure to notify appellees of the defects in the dinette should not bar him from recovering damages for the defective dinette. However, the decision in Logsdon to grant damages was directly based on the court's finding that there was fraud.
In the case sub judice, the trial court found that there was no evidence to support a finding of fraud on the part of appellees, and that the damages based on breach of warranty for the dinette should be excluded. Based on its finding that there was no fraud on the part of the appellees, the trial court properly found that Logsdon was inapplicable to this case.
Appellant's Fifth Assignment of Error is OVERRULED.
Appellant's assignments of error are OVERRULED in toto and the judgment of the trial court is AFFIRMED.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ROSS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
Harsha, J., and Kline, J.: Concur in Judgment Only.
[1] The value of the replacement parts were as follows: 1) $575 for a new dinette; 2) $500 for a new couch; and 3) $150 for a new hot water tank.