NORTHEAST OHIO ELITE GYMNASTICS TRAINING
CENTER, INC., et al., Appellees,

v.

OSBORNE, Appellant, et al.

[Cite as *Northeast Ohio Elite Gymnastics Training Ctr., Inc.
v. Osborne,* 183 Ohio App.3d 104, 2009-Ohio-2612.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 07CA0117–M.

Decided June 8, 2009.

106

Joseph M. Madachik, for appellees.

James R. McIlvaine and Thomas J. Morris, for appellant.

---

Moore, Presiding Judge.

{¶ 1} Appellant, Sherri Osborne, appeals from the decision of the Medina County Common Pleas Court. This court reverses and enters judgment in Osborne's favor.

I

{¶ 2} Appellee, Joanne Fornaro owned and operated Northeast Ohio Elite Gymnastics Training Center ("NEO"). In 2005, Fornaro decided to add a cheerleading program. To this end, she hired Sherri Osborne to start and oversee the program. The parties dispute whether Osborne was an independent contractor or Fornaro's employee. Prior to May 2005, Osborne and Fornaro's business relationship began to deteriorate. During this time period, Fornaro's five-year lease on the NEO location came to an end. For over a year, Fornaro continued to operate under a month-to-month lease while attempting to negotiate lease terms with the landlord. In March 2005, the landlord leased the property to Osborne, who was to take occupancy in June 2005. In May 2005, Fornaro fired Osborne. Soon thereafter, Fornaro vacated the premises and Osborne opened her business, Ultimate Force Training Center. Fornaro testified that by the fall of 2005, her business was no longer in operation.

{¶ 3} In July 2005, Fornaro filed a complaint against Osborne, claiming theft of trade secrets, tortious interference with business relationships, tortious interference with a registered trade name, defamation, conversion, malicious prosecution, and/or abuse of process. In March 2006, Fornaro amended her complaint. The amended complaint included claims of theft of trade secrets, tortious interference with business relationships, tortious interference with a registered trade name, conversion, and defamation.

{¶ 4} On August 27, 2007, the matter proceeded to a jury trial. At the close of Fornaro's case, the trial court granted Osborne's motion for a directed verdict with regard to all the claims except the defamation claim. Fornaro's defamation allegations centered on statements that Osborne made to the Hinckley Police in three separate police reports. At the close of all evidence, the jury found Osborne liable for defamation, awarding Fornaro $20,000 in damages and $25,000 in punitive damages. Osborne timely appealed this decision. She has raised three assignments of error for our review. We have combined two of her assigned errors for ease of review.

II

## ASSIGNMENT OF ERROR I

The trial court erred as a matter of law in failing to dismiss the plaintiff's case in that all the statements which are the basis of the defamation claim are true.

## ASSIGNMENT OF ERROR II

The trial court erred as a matter of law in failing to dismiss the plaintiff's case in that the plaintiff failed to show any damages to the defamation claim.

{¶ 5} In her first and second assignments of error, Osborne contends that the trial court erred as a matter of law in failing to dismiss her case, in that all the statements that were the basis of the defamation claim were true and because Fornaro failed to show any damages with respect to the defamation claim.

{¶ 6} " 'A motion for directed verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.' " *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4, quoting *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. Accordingly, we review the trial court's ruling on a motion for a directed verdict de novo. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 423 N.E.2d 467. In accordance with Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Furthermore, if the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. Conversely, the motion must be denied when substantial evidence exists upon which reasonable minds may reach different conclusions. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 7} To prevail in a defamation case, a plaintiff who is a private person must prove five elements: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per

se or caused special harm to the plaintiff." *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206, 687 N.E.2d 481. "Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo. Written matter is libelous per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." (Citations omitted.) Id. at 206–207, 687 N.E.2d 481.

{¶ 8} When not ambiguous, whether a statement is defamation per se is a question of law for the trial court to determine. Id. at 207, 687 N.E.2d 481; see also *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 486 N.E.2d 1220. While spoken words accusing a person of committing a crime are slanderous per se only if the crime is one of moral turpitude, written words accusing a person of committing any crime are libelous per se. Id., citing *Akron–Canton Waste Oil v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955; *State v. Smily* (1881), 37 Ohio St. 30, 32–33.

{¶ 9} When a statement is defamation per se, some damages are presumed, and the plaintiff is not required to prove special damages. *Shoemaker v. Community Action Org. of Scioto Cty., Inc.*, 4th Dist. No. 06CA3121, 2007-Ohio-3708, 2007 WL 2070365, ¶ 13. In contrast, if the statement is defamation per quod, special damages must be pleaded and proven. *Murray v. Knight–Ridder, Inc.*, 7th Dist. No. 02 BE 45, 2004-Ohio-821, 2004 WL 333250, ¶ 16. " 'Special damages' are damages of such a nature that they do not follow as a necessary consequence of the [complained injury]." (Citations omitted.) *Gennari v. Andres–Tucker Funeral Home, Inc.* (1986), 21 Ohio St.3d 102, 106, 21 OBR 395, 488 N.E.2d 174. Further, special damages are damages that " 'result from conduct of a person other than the defamer or the one defamed.' " *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 594, 21 O.O. 471, 37 N.E.2d 584, quoting 3 Restatement of the Law, Torts 185, Section 575, comment b.

{¶ 10} We first note that both parties fail to support a substantial portion of their arguments with citations of case law. App.R. 16. While Osborne points to only one police report in her brief, we note that there were three reports before the trial court containing allegedly defamatory statements.

**Osborne's Police Statement**

{¶ 11} In late March 2005, Fornaro contacted the police regarding a break-in at her facility. On April 26, 2005, as part of their investigation, the police spoke with Osborne. During her testimony, Osborne read the statement she had made to the police. Her statement included information regarding her knowledge of Fornaro's personal and professional financial situation. Fornaro did not present any evidence that these statements were false or defamatory.

Even if we were able to cross that threshold, we conclude that Fornaro presented no evidence that these statements were defamation per se, i.e., that the statements reflected upon Fornaro's character in such a manner that would cause her to be ridiculed, hated, or held in contempt or would injure her in her trade or profession. *Gosden*, 116 Ohio App.3d at 206–207, 687 N.E.2d 481. Accordingly, we conclude that assuming these statements were false, they would be defamation per quod. To that end, Fornaro was required to plead and prove special damages. *Murray*, 2004-Ohio-821, 2004 WL 333250, ¶ 16. Our review of the record reveals no such proof. Reviewing the evidence in the light most favorable to Fornaro, reasonable minds could conclude only that Fornaro failed to establish several essential elements with regard to her defamation claim as to these specific statements. Accordingly, the trial court should have granted a directed verdict as to these statements. This portion of Osborne's first and second assignments of error is sustained.

### The Equipment Police Report

{¶ 12} On June 3, 2005, Osborne contacted the police with regard to some equipment that she paid for that was delivered to and accepted by Fornaro. The parties agree that the issue with the police report and subsequent investigation involving the equipment is whether Osborne made an untrue or defamatory statement by failing to inform the police that she had previously told Fornaro that she (Osborne) had paid for the equipment with Booster money. Fornaro explained that the Booster club accounts were controlled by the parents, not the gym, and were funded by activity fees and with money raised by the parents. The money was intended in part to pay the coaches to take the cheerleaders to competitions. She explained that they had just set up the cheerleader Booster account, but had yet to establish an actual Booster club and turn the account over to the parents.

{¶ 13} Osborne contends that her statement does not amount to defamation and that the statement in the police report was true. Fornaro contends that this *omission* amounts to a lie. Fornaro states that Osborne lied to the police by choosing to pursue a theft accusation without supplying them with the earlier conversation between Osborne and Fornaro. Osborne admitted that she had lied to Fornaro when she initially told her that she had paid for the equipment with Booster money.

{¶ 14} We are constrained in our analysis by our standard of review. In order to sustain Osborne's argument, we must determine whether "after construing the evidence most strongly in favor of [Fornaro], * * * upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to [Fornaro]." Civ.R. 50(A)(4). Therefore, we

must first determine, after viewing the evidence in the light most favorable to Fornaro, whether reasonable minds could conclude only that Osborne's statement to the police alleging theft did not amount to a false and defamatory statement. *Gosden,* 116 Ohio App.3d at 206, 687 N.E.2d 481. We conclude that the statements Osborne made to the police were not false or defamatory with respect to the first element of defamation.

{¶ 15} The evidence before the court was that on June 3, 2005, Osborne called the police regarding a shipment that Fornaro had accepted at the NEO Hinckley location. According to the report, Osborne stated that she had recently rented the building and was to take over the rental after May 31, 2005. In anticipation, she ordered equipment with the condition that it would not be delivered until after June 1, 2005. A portion of the equipment was delivered early, and Fornaro refused the shipment at the Hinckley location and requested that it be shipped to her new business location. Fornaro signed for the equipment at this new location. On June 4, 2005, another police report with regard to this incident stated that the police spoke with Fornaro. Fornaro informed the police that Osborne had previously told her that she was going to spend Booster money on the new equipment. Also on June 4, 2005, police met with Osborne. Osborne provided police with an itemized list of the equipment purchased that indicated that the purchases had been paid for by using Osborne's mother's credit card and not the Booster account funds. On June 14, 2005, the police contacted Osborne to determine whether she wanted to proceed with charges against Fornaro. On June 19, 2005, Osborne informed the police that she wished to proceed with charges. On June 21, 2005, the police met with Fornaro and retrieved the equipment.

{¶ 16} Fornaro informed the police that Osborne had previously told her that the equipment was paid for by the Boosters. On the same day, Osborne provided police with documentation that the equipment was in fact paid for by her mother. Accordingly, the police had all of the requisite information prior to their attempts to retrieve the equipment from Fornaro. For the next ten days, police were unable to coordinate a meeting time with Fornaro to obtain the equipment. Construing the facts in a light most favorable to Fornaro, we conclude that any omission by Osborne of the fact that she had previously informed Fornaro that the equipment was paid for by the Boosters does not affect the truth of the theft allegation. *Scaccia v. Dayton Newspapers, Inc.,* 2d Dist. No. 22813, 2009-Ohio-809, 2009 WL 440948, at ¶ 9 (holding that any omissions in a newspaper article did not affect the substantial truth of the articles). Therefore, Fornaro failed to establish that the statement was false. *Gosden,* 116 Ohio App.3d at 206, 687 N.E.2d 481. As we conclude that reasonable minds could come to only one conclusion on this element, the directed verdict should have been granted.

Accordingly, this portion of Osborne's first and second assignments of error is sustained.

### The Trophy Police Report

{¶ 17} The third police report concerned trophies that Osborne believed belonged to the cheerleaders. Upon moving out of the building, Fornaro took these trophies with her. On June 20, 2005, Osborne contacted the police, who filed a report stating the following:

On 06/20/2005 at 1020 hours I was met on station by * * * Osborne who told me that she had formally (sic) worked for * * * Fornaro and ran the cheer leader program for the former NEO Elite gymnastics. She told me that the program she ran had been awarded several trophies and banners and that when * * * Fornaro closed the business in Hinckley, she took all of the items. * * * *Osborne told me that she worked for* * * * *Fornaro as an independent contractor* and the items that were taken belong to the program she ran and the children who were awarded them.

(Emphasis added.)

{¶ 18} At trial, Fornaro took issue with Osborne's statement that she was an independent contractor. We will restrict our discussion of this statement to the last element of defamation: whether the statement was either defamatory per se or caused special harm to Fornaro. See *Gosden,* 116 Ohio App.3d at 206, 687 N.E.2d 481. We conclude that the trial court was incorrect in denying Fornaro's motion for a directed verdict with regard to this police report, as the statement was not defamation per se and Fornaro failed to show any evidence that the statement caused her special harm.

{¶ 19} We reiterate that whether a statement is defamatory per se is a question of law for the trial court to determine. *Gosden,* 116 Ohio App.3d at 207, 687 N.E.2d 481. In the instant case, the trial court did not specifically discuss whether this particular statement was defamatory per se, but rather, only discussed the equipment police report. We conclude that even assuming Fornaro showed that Osborne's statement that she was an independent contractor was false, the statement does not amount to defamation per se.

{¶ 20} "Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through *interpretation or innuendo.*" (Emphasis added.) Id. at 206–207, 687 N.E.2d 481. Fornaro contends that Osborne's statement that she was an independent contractor was a false statement that Osborne used to bolster a theft allegation. We do not agree. If we follow Fornaro's argument that a statement regarding Osborne's employment status amounted to an implication that Fornaro was a thief, we must conclude that this statement was defamation per quod. There is no express

language in Osborne's statement accusing Fornaro of theft. In other words, on the very basis of Fornaro's argument, we must view this police report as defamatory through *interpretation or innuendo*. Id. As such, this statement does not amount to defamation per se.

{¶ 21} In the absence of defamation per se, Fornaro was required to plead and prove special damages. *Murray*, 2004-Ohio-821, 2004 WL 333250, ¶ 16. A review of the record reveals that Fornaro has failed to show any evidence of damages with regard to this particular statement. Because Fornaro failed to produce any evidence on an essential element of her defamation claim, a directed verdict was appropriate. *Hargrove*, 66 Ohio App.3d at 695, 586 N.E.2d 141. Accordingly, this portion of Osborne's first and second assignment of error is sustained.

{¶ 22} Osborne's first and second assignments of error are sustained.

## ASSIGNMENT OF ERROR III

The trial court erred as a matter of law in failing to remit the damages in that they are as a result of prejudice and passion and the jury lost its way.

{¶ 23} In her third assignment of error, Osborne contends that the trial court erred as a matter of law in failing to remit the damages in that they resulted from prejudice and passion and the jury lost its way.

{¶ 24} Because we have reversed the trial court's decision denying Osborne's directed verdict with regard to all the allegedly defamatory statements, any discussion of the amount of the jury award with regard to these claims is moot. Accordingly, we decline to address Osborne's third assignment of error. App.R. 12(A)(1)(c).

### III

{¶ 25} Osborne's first and second assignments of error are sustained. We decline to address her third assignment of error. The judgment of the Medina County Court of Common Pleas is reversed, and we enter judgment in favor of Osborne.

Judgment reversed.

DICKINSON and BELFANCE, JJ., concur.