[Cite as *Earp v. Kent State Univ.*, 2010-Ohio-5904.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PAUL W. EARP

     Plaintiff

     v.

KENT STATE UNIVERSITY

     Defendant
     Case No. 2009-04891

Judge Clark B. Weaver Sr.
Magistrate Lewis F. Pettigrew

MAGISTRATE DECISION

{¶ 1} Pursuant to Civ.R. 53, Magistrate Lewis F. Pettigrew was appointed to conduct all proceedings necessary for decision in this matter.

{¶ 2} Plaintiff brought this action alleging defamation and breach of contract, and seeking declaratory relief. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 3} In 1995, plaintiff, Paul Earp, was charged with two counts of sexual assault on a child, a felony of the second degree under Texas law.[1] According to plaintiff, both charges stem from his romantic involvement with a 16-year-old female. At that time, plaintiff was approximately 34 years of age.

{¶ 4} According to the evidence, plaintiff entered a plea of "no contest" in two related cases, whereupon he was sentenced to ten years probation and, "deferred adjudication," under Texas law. On October 24, 2005, the District Court of Jackson County, Texas issued an "Order Dismissing Cause Without Adjudication of Guilt" in

---

[1]Throughout this decision, the term plaintiff shall be used in reference to Paul Earp.

each of the criminal cases based upon the finding that plaintiff had "satisfactorily fulfilled the conditions of community service." According to plaintiff, the legal effect of the October 24 orders is that plaintiff was never convicted of the offenses for which he was charged.

{¶ 5} In August 2008, plaintiff, now married and living in Ravenna, Ohio, submitted an online employment application to defendant seeking a position as Senior User Support Analyst. On the application, plaintiff was asked whether he had been convicted of a crime and he answered "no." A space where plaintiff could have entered an explanation if he had answered "yes" was left blank.

{¶ 6} At the time that he submitted the application, plaintiff was working part-time for the University of Akron as a computer-support technician and he was looking for a full-time position. Plaintiff considered a position in defendant's Information Services (I.S.) Department as a good option inasmuch as his wife Vanessa was employed as a teacher with defendant. Plaintiff's wife knew of the Texas proceedings.

{¶ 7} Plaintiff was granted an interview with three members of defendant's I.S. department, which took place in late August or early September 2008. Plaintiff was later called back for a second interview with Dr. Franks, defendant's Chief Information Officer. As a result of the interview process, an offer of employment was extended to plaintiff both orally and in writing. (Plaintiff's Exhibit 3.) Neither the possibility of a background check nor plaintiff's past criminal charges were discussed at any of the pre-offer interviews.

{¶ 8} On September 9, 2008, plaintiff arrived at defendant's human resources department in order to complete an employment package. On that occasion, defendant asked plaintiff to execute a release authorizing defendant to complete a background check. Plaintiff realized that defendant would likely uncover the 1995 criminal proceedings and he "told them what was going to show up in Texas." When plaintiff was asked upon cross-examination why he did not disclose the information sooner he

replied that he "didn't want to open up a can of worms." Plaintiff testified that when he left defendant's offices that day, he still believed that he had been hired.

{¶ 9} Plaintiff did not receive any further communication from defendant after the meeting even though he had attempted to contact defendant by telephone and email. On September 19, 2008, plaintiff arrived at the lobby of defendant's I.S. department and was let into the department by one of defendant's technicians. According to plaintiff, when an I.S. manager saw him he told plaintiff to return to the front lobby and that the issue of plaintiff's employment was "out of our hands."

{¶ 10} After plaintiff returned to the lobby he was approached by Director of Talent Management Joseph Vitale and another human resources employee. Plaintiff testified that he was prepared to show Vitale the documents pertaining to his Texas case. According to plaintiff, however, Vitale stated, "you lied on your application, you were convicted of a felony, and we are rescinding the offer because of it." Plaintiff attempted to explain to Vitale that he had not been "convicted" and he asked Vitale to look at the Texas documents, but Vitale refused.

{¶ 11} Plaintiff's lawyer subsequently sent a letter to Vitale in an effort to explain the situation in Texas but defendant never responded to the letter. (Plaintiff's Exhibit 5.)

{¶ 12} Defamation occurs when written or spoken statements reflect upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852. "Slander" refers to spoken defamatory words, while "libel" refers to written or printed defamatory words. Id.

{¶ 13} Inasmuch as plaintiff is not a public figure, in order for plaintiff to prevail on a defamation claim he must prove: "'(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff.'" See *Northeast Ohio Elite Gymnastics Training*

*Ctr., Inc. v. Osbourne*, 183 Ohio App.3d 104, 109, 2009-Ohio-2612, quoting *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206.

{¶ 14} Under Ohio common law, actionable defamation falls into one of two categories: defamation per se or defamation per quod. Id. Spoken words are slander per se when they tend to injure a person in his trade or occupation. *Schoedler v. Motometer Gauge & Equip. Corp.* (1938), 134 Ohio St. 78, 84. When a statement is slanderous per se, some damages are presumed, and the plaintiff is not required to prove special damages. Id. See also *Shoemaker v. Community Action Org. of Scioto Cty., Inc.*, Scioto No. 06CA3121, 2007-Ohio-3708, at ¶13.

{¶ 15} With regard to the truth or falsity of the two statements, plaintiff has proven that the statement "you were convicted of a felony" is legally false in that the entry of the Texas district court specifically states that the charges are dismissed "without an adjudication of guilt." The statement "you lied on your application" is false in that the online application requires an answer in the affirmative only if the applicant has been "convicted of a crime." The court further finds that such statements would likely cause plaintiff to be ridiculed, hated, or held in contempt. Thus, the two statements are both false and defamatory.

{¶ 16} Additionally, the alleged defamatory statements in this case are slanderous per se inasmuch as the statement "you were convicted of a felony" and "you lied on your application" arguably injure plaintiff's employment in his chosen occupation or profession.[2] Thus, the statements are slanderous per se which means that plaintiff is relieved of the burden of proving special damages.

---

[2]The statement "you were convicted of a felony" does not suggest a crime of moral turpitude unless the recipient has knowledge of the facts surrounding the conviction. Thus, the statement is not slanderous per se on that basis. See *Schoedler*, supra; *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136. (Spoken words accusing a person of committing a crime are slanderous per se only if the crime is one of moral turpitude.)

{¶ 17} However, as defendant correctly asserts, plaintiff has failed to satisfy his burden of proof on the critical elements of publication to a third-party and actionable fault as to the falsity of the statements.

{¶ 18} With respect to the element of publication, the only proven instance where the slanderous statements were uttered was during the discussion in the lobby. The parties agree that neither plaintiff's wife who had prior knowledge of the Texas matter, nor the other unidentified human resources employee, qualifies as a third-party for purposes of the element of publication. Although plaintiff insists that the receptionist was close enough to hear Vitale's statements, the evidence establishes that she was not within earshot inasmuch as the discussion took place near the elevators at the back of the lobby and the volume of the conversation was not much greater than a whisper. Plaintiff did not present credible evidence that anyone else heard the statements made in the lobby.

{¶ 19} Plaintiff also claims that Vitale conveyed the false information to plaintiff's co-workers at the University of Akron, a charge that Vitale adamantly denies. However, plaintiff did not submit any evidence to support his claim other than his testimony that some of his co-workers had knowledge of the Texas matter. Given the fact that information pertaining to proceedings in Texas is available to the public via the Internet and other means, the court is not convinced that Vitale published any defamatory statements to plaintiff's co-workers. Thus, plaintiff has failed to satisfy his burden of proof on the critical element of publication to a third party.

{¶ 20} With regard to Vitale's culpability as to the falsity of the statements, Vitale testified that the information uncovered by the background check as reflected in the investigation report prepared by Open Online led him to believe that plaintiff had been convicted of a felony in Texas and that plaintiff had lied on his employment application. Vitale lives in Ohio and he is not a lawyer. The information Vitale relied upon was supplied to him by a private company that had been conducting background checks for defendant for a number of years. Although plaintiff claims that some of the information

contained in the investigation report was false, nothing in the report would have alerted a layperson in Vitale's position of the need to make a further investigation.

{¶ 21} In the court's opinion, it is doubtful that anyone, other than a lawyer familiar with Texas criminal codes and procedures, would have gathered from a reading of the investigation report that plaintiff was not convicted of the crime of sexual assault upon a child.  Thus, the court finds that Vitale's failure to realize the falsity of the two defamatory statements was not the result of a lack of due care on his part.  Even plaintiff acknowledged that Vitale simply did not understand that plaintiff was not convicted in the Texas matter.  Thus, even if a publication had been proven, plaintiff has failed to satisfy his burden of proof on a second critical element of fault.  In short, plaintiff's claim of defamation must fail.

{¶ 22} With regard to plaintiff's claim of breach of contract, the evidence establishes that contract formation was expressly contingent upon a significant event which never occurred, the approval of the board of trustees.  See R.C. 3341.04.  ("The board of trustees of * * * Kent state university * * * shall elect, fix the compensation of, and remove the president and such number of professors, teachers, and other employees as may be deemed necessary * * *.")  Thus, no contract of employment was formed.

{¶ 23} For the foregoing reasons, plaintiff's contract claim must fail as well as plaintiff's claim for declaratory relief.  Having determined that plaintiff has failed to satisfy his burden of proof on any of the asserted claims, judgment is recommended in favor of defendant.[3]

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections,*

---

[3]Defendant's post-trial motion to amend its answer to assert the defense of release and waiver is DENIED.

*any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
LEWIS F. PETTIGREW
Magistrate

cc:

David C. Perduk                      Randall W. Knutti
Richard P. Martin                  Assistant Attorney General
3603 Darrow Road                150 East Gay Street, 18th Floor
Stow, Ohio 44224                Columbus, Ohio 43215-3130

LP/cmd
Filed November 5, 2010/To S.C. reporter December 1, 2010