[Cite as *Alsup v. Univ. of Cincinnati*, 2012-Ohio-6325.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SHIRLEY A. ALSUP

    Plaintiff

    v.

UNIVERSITY OF CINCINNATI

    Defendant

Case No. 2010-04602

Judge Alan C. Travis

<u>DECISION</u>

{¶ 1} Plaintiff brought this action alleging defamation.[1]  The issues of liability and damages were bifurcated and the case proceeded to trial on the issues of liability and the civil immunity of Andrea Lindell, Ph.D., dean of defendant's College of Nursing.[2]

{¶ 2} Plaintiff served as the academic administrator and director of defendant's, University of Cincinnati (UC), College of Nursing co-op program, which included responsibility for management of the program's relationships with three hospitals that placed UC nursing students upon graduation.  Plaintiff was hired to establish the co-op program based, in part, on her experience working at University Hospital.

{¶ 3} Plaintiff acknowledged that she had experienced conflicts with one of her associate directors, Leigh Ann Pansch.  According to plaintiff, Pansch had trouble completing her duties as an associate director and her attendance had become an issue.  Pansch had communicated with Madeleine Martin, Ed.D., plaintiff's supervisor

---

[1]Although plaintiff asserted several additional claims in her complaint, the evidence and arguments presented by plaintiff pertained only to defamation and whether Andrea Lindell, Ph.D. is entitled to civil immunity.

and Assistant Dean of the college of nursing, regarding Pansch's concern that her professional relationship with plaintiff was "becoming hostile." (Plaintiff's Exhibit 7.) Plaintiff testified that she worked with Pansch to resolve the difficulties; however, Pansch subsequently filed a grievance regarding plaintiff's management. Plaintiff related that she was not aware of Pansch's grievance and that she also filed a grievance with defendant's human relations department, which was not resolved during her term of employment.

{¶ 4} Dr. Martin testified that, beginning no later than August 2008, she met with plaintiff to discuss her concerns about the co-op program and plaintiff's performance. Dr. Martin also met with plaintiff to discuss Pansch's performance. Dr. Martin documented meetings related to the co-op program and the specific issues and actions taken as a result of the meetings. (Plaintiff's Exhibit 5.) On March 6, 2009, Dr. Martin informed Dean Lindell that her efforts to address issues relating to staff management were not successful and that she would meet with plaintiff and Pansch before making a recommendation to Dean Lindell regarding "the next step where some more formal action or decision" would occur. *Id.*

{¶ 5} On March 16, 2009, plaintiff was asked to attend a meeting with Dr. Martin. Upon her arrival, plaintiff discovered that Dean Lindell and representatives from defendant's human resources department were also in attendance. Plaintiff was asked to read and sign a letter which informed her that she was being terminated from her employment for cause. (Plaintiff's Exhibit 15.) According to the letter, plaintiff failed "to facilitate a positive working environment" and created "a negative impact with the contracted clinical agencies." Plaintiff testified that she was "shocked" by the termination, but she told Drs. Martin and Lindell that she wished the program well. It is undisputed that plaintiff was an at-will employee at the time of the termination.

{¶ 6} A few days after her employment was terminated, plaintiff spoke with Rebecca Litchholt, a student in the program. Plaintiff informed Litchholt that she was told she had been fired for being an ineffective leader. To show support for plaintiff, Litchholt circulated a petition among students and faculty. The petition prompted Dean Lindell to meet privately with Litchholt and also to hold a second meeting with co-op

---

[2]Plaintiff's April 12, 2012 unopposed motion for an extension of time to file her post-trial brief is GRANTED. Plaintiff's motion to strike portions of Defendant's Exhibit B, which was incorporated in plaintiff's May 4, 2012 reply brief, is DENIED.

students and faculty. Litchholt testified that, at the initial meeting, Dean Lindell stated that defendant had been "collecting data" and investigating plaintiff. Litchholt recalled that at the second meeting with students and faculty, Dean Lindell stated that plaintiff had been under investigation for a period of one to two years. Sally Dunn, a faculty member who attended the second meeting, testified that she also heard Dean Lindell state that plaintiff had been under investigation for one and a half to two years. According to Dunn, Dean Lindell's statement that plaintiff had been under investigation "took the air out of the room." Although Dean Lindell's statement elicited more questions, she stated that she could not discuss specific details regarding the decision to fire plaintiff.

**DEFAMATION**

{¶ 7} Plaintiff alleges that Dean Lindell's statement that plaintiff had been under investigation for one and a half to two years was defamatory. Plaintiff testified that she was humiliated and became severely depressed. According to plaintiff, the defamatory comments affected her marriage and damaged her professional reputation.

{¶ 8} Defamation is the publication of a false statement "'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 1995-Ohio-66. "Slander" refers to spoken defamatory words, while "libel" refers to written or printed defamatory words. *Id.*

{¶ 9} Inasmuch as plaintiff is not a public figure, in order for her to prevail on a defamation claim she must prove: "'(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff.'" *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osbourne*, 183 Ohio App.3d 104, 109, 2009-Ohio-2612, quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (1996).

{¶ 10} Under Ohio common law, actionable defamation falls into one of two categories: defamation per se or defamation per quod. *Id.* Spoken words are slander per se when they tend to injure a person in his trade or occupation. *Schoedler v.*

*Motometer Gauge & Equip. Corp.*, 134 Ohio St. 78, 84 (1938). When a statement is slanderous per se, some damages are presumed, and the plaintiff is not required to prove special damages. *Id. See also Shoemaker v. Community Action Org. of Scioto Cty., Inc.*, 4th Dist. No. 06CA3121, 2007-Ohio-3708, at ¶ 13.

{¶ 11} The court finds that plaintiff has proven, by a preponderance of the evidence, that Dean Lindell stated that plaintiff had been under investigation for one and a half to two years. Both Litchholt and Dunn testified that they were certain that Dean Lindell made the statement to the group of students and faculty. The court finds that the testimony of Litchholt and Dunn was credible. Furthermore, plaintiff received email from other students who recalled that Dean Lindell stated that plaintiff was under investigation.

{¶ 12} The alleged defamatory statement in this case is slanderous per se inasmuch as the statement "under investigation for one and a half to two years" arguably tends to injure plaintiff's employment in her chosen occupation or profession. Mary Hill, M.D., testified that she had worked with plaintiff for approximately 12 years and that plaintiff's reputation in the medical community was "flawless" prior to the incident. According to Dr. Hill, plaintiff had great difficulty finding another job, which Dr. Hill attributed to harm to plaintiff's reputation as a result of Dean Lindell's statement that plaintiff had been under investigation. Inasmuch as such statements are slanderous per se, plaintiff is relieved of the burden of proving special damages.

{¶ 13} Defendant has asserted the defense of qualified privilege. "A qualified or conditionally privileged communication is one made in good faith on any subject to which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten,* 43 Ohio St. 2d 237, 243-244 (1975); *Burkes v. Stidham*, 107 Ohio App. 3d 363, 373 (1995). Once a qualified privilege is shown, falsity and actual malice must be demonstrated with convincing clarity in order to recover. *Burkes*, at 373. With regard to qualified privilege, "actual malice" has been defined as "[a]cting with knowledge that the statements are

false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus.

{¶ 14} Dean Lindell testified in her deposition that plaintiff was not under investigation. (Plaintiff's Exhibit 21, page 48, lines 19-20.) Inasmuch as Dean Lindell made the statement with knowledge that it was false, the communication was not privileged. Such statements would likely cause plaintiff to be ridiculed, shamed, or held in contempt. Therefore, the statement was both false and defamatory.

**CIVIL IMMUNITY**

{¶ 15} R.C. 9.86 provides, in part: "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were *manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.*" (Emphasis added.)

{¶ 16} The issue whether an employee is entitled to immunity is a question of law. *Nease v. Medical College Hosp.*, 64 Ohio St.3d 396, 1992-Ohio-97, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133. The question whether the employee acted outside the scope of their employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner is one of fact. *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9. Plaintiff bears the burden of proving that the state employee should be stripped of immunity. *Fisher v. University of Cincinnati Med. Ctr.*, 10th Dist. No. 98AP-142 (Aug. 25, 1998).

{¶ 17} In the context of immunity, an "employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take [such] act manifestly outside the scope of employment." *Elliott v. Ohio Dept. of Rehab. & Corr.*, 92 Ohio App.3d 772, 775 (1994), citing *Thomas v. Ohio Dept. of Rehab. & Corr.*, 48 Ohio App.3d 86, 89 (1988). "It is only where the acts of state employees are motivated by actual malice or other such reasons giving rise to punitive damages that their conduct may be outside the scope of their state employment." *James H. v. Dept. of Mental Health and Mental Retardation*, 1 Ohio App.3d 60, 61 (1980). "The act must be so divergent that it severs the employer-employee relationship." *Elliott*, supra.

{¶ 18} Although the court has found that Dean Lindell acted with actual malice for the purposes of plaintiff's defamation claim, "actual malice" in that context does not equate with "actual malice" in the context of immunity. "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term 'reckless' is often used interchangeably with the word 'wanton' and has also been held to be a perverse disregard of a known risk." *Caruso v. State*, 136 Ohio App.3d 616, 620-621 (2000). (Internal citations omitted.)

{¶ 19} In *Caruso*, the Tenth District Court of Appeals determined that a state-employed doctor's threat to slap an employee, followed by a touch on the arm to move the employee so the doctor could close the office door, did not rise to the level of "recklessness" and that the alleged assault was not committed simply to gratify his own personal feelings of animosity and resentment. Rather, the court determined that the conduct was "in some, albeit, misguided way, for the purpose of facilitating the business for which the doctor was engaged." *Id*. at 622. Thus, the court concluded that the doctor's conduct was not manifestly outside the scope of his employment and that he was entitled to immunity.

{¶ 20} The evidence establishes that Dean Lindell did not use the term "under investigation" to gratify her own personal feelings of animosity and resentment. The court finds that the statements Dean Lindell made to the assembled students and faculty did not constitute malicious purpose, bad faith or recklessness as contemplated for the purposes of immunity. The court is also convinced that Dean Lindell's statements to the students and faculty were made for the purposes of both addressing concerns raised in the petition and maintaining the integrity of the co-op program. Thus, the court concludes that Dean Lindell acted in the interest of UC. As such, her conduct

was not manifestly outside the scope of her employment and she is entitled to civil immunity.

{¶ 21} For the foregoing reasons, judgment shall be rendered in favor of plaintiff.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SHIRLEY A. ALSUP

    Plaintiff

    v.

UNIVERSITY OF CINCINNATI

    Defendant

Case No. 2010-04602

Judge Alan C. Travis

## JUDGMENT ENTRY

{¶ 22} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff.

{¶ 23} The court finds that Andrea Lindell, Ph.D., is entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

{¶ 24} A case management conference is scheduled for *August 30, 2012, at 1:30 p.m.*, to discuss further proceedings.

_____
ALAN C. TRAVIS
Judge

cc:

Allan Showalter
Assistant Attorney General
Executive Agencies Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Dale A. Stalf
Kevin K. Frank
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202

004
Filed July 31, 2012
To S.C. Reporter January 16, 2013