[Cite as *Carr v. Educational Theatre Assn.*, 2023-Ohio-1681.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DIANE M. CARR, | : | APPEAL NO. C-220240<br>TRIAL NO. A-2101599 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| EDUCATIONAL THEATRE<br>ASSOCIATION, | : | |
| and | : | |
| | : | |
| JULIE C. THEOBALD, | | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 19, 2023

*Freking Myers & Reul LLC* and *George M. Reul, Jr.,* for Plaintiff-Appellant,

*Jackson Lewis P.C., Ryan M. Martin* and *Alessandro Botta Blondet,* for Defendants-Appellees.

**BERGERON, Judge.**

{¶1}    After pressing "send" on an email, defendants-appellees Educational Theatre Association ("EdTA") and then-executive director of EdTA, Julie Theobald (collectively "the EdTA defendants"), found themselves on the receiving end of a lawsuit.  Although she was not explicitly named in the email, plaintiff-appellant Dr. Diane Carr claimed that the email defamed her.  She maintained, throughout this litigation, that the email constituted defamation per se, but she also acknowledged that the defamatory effect could only be appreciated by implication or innuendo. Seeing nothing actionable in the email, the trial court eventually granted summary judgment in favor of the EdTA defendants.  After careful review of the email and governing caselaw, we agree with the trial court's conclusion and affirm its judgment.

I.

{¶2}    Dr. Carr joined EdTA, a nonprofit that promotes theatre education in schools, in 2004, and she eventually worked her way up to Executive Director in 2011.  In 2013, Ms. Theobald asked Dr. Carr to oversee the International Thespian Officer ("ITO") program and the students who participated in that program. Several years later, in March 2019, Dr. Carr learned that EdTA would terminate her in May 2019 based on her job performance.  Although Dr. Carr disagreed with the decision, she negotiated a separation agreement that released all claims she might possess against EdTA and its employees.

{¶3}    In August 2019, EdTA received complaints from ITO student participants concerning Dr. Carr's conduct and, through outside counsel, notified her generally about the allegations—but EdTA declined to reveal the substance of

the allegations other than to indicate that they did not involve physical abuse. EdTA also notified Dr. Carr that it would hire an independent firm to investigate the allegations, and it requested that she cooperate in the investigation. The record, however, fails to illuminate the results of any investigation.

{¶4} Nevertheless, according to the EdTA defendants, in June 2020, new information and complaints about the ITO program during Dr. Carr's tenure surfaced. Around the same time, Dr. Carr accepted a speaking engagement at a virtual student leadership event (i.e., a Zoom event) hosted by six EdTA state chapters. Upon discovering that Dr. Carr—and another ITO adult liaison also a subject of the complaints—would speak at the event, Ms. Theobold and the EdTA board of directors dispatched the following email, which we reproduce in full:

> Dear Chapter Directors from Alabama, Georgia, Missouri, New Jersey, North Carolina, and Washington,
>
> Cc: All Chapter Directors, EdTA Board, Julie Theobald, Brian Monk, Hans Weichhart, Allison Dolan, Sarah Etheridge, Olivia Micer, Shaila Seth
>
> In our Association, the well-being of our students is our highest priority. According to the EdTA Code of Professional Standards, as professional members of EdTA, we shall maintain a professional relationship with students both in and outside of the classroom and consider the well-being of students in all decisions and actions. It is with this in mind that we are compelled to communicate with urgency.
>
> It has come to our attention that the chapters of Alabama, Georgia, Missouri, New Jersey, North Carolina, and Washington plan to host a virtual student leadership event this week for STOs from these chapters. Some of the past ITO adult liaisons from 2013-2019 are participating in this week's STO leadership event.
>
> We urge you to postpone this event.

3

As a reminder, in the summer of 2019 we conducted an ITO program review. One of the reasons for this review was that concerns were raised by former ITO members who served from 2013-2019 about the treatment of students by the adult ITO liaisons who served during that time period. These concerns include allegations of negligence and emotional abuse.

We took steps forward to ensure the safety of the 2019-2020 ITO and future ITOs and STOs. We are acknowledging there is more work to be done in the interest of the well-being of students.

We have received new information in the past couple of weeks that gives additional insight and severity to the 2019 program review. It is our duty to conduct a full investigation on all sides of these allegations, and we will need time to follow through and come to appropriate resolutions.

We urge you to postpone the leadership event while we take steps to fully address the situation. If you are unwilling to postpone this event, we will communicate to the members in your chapters that this event is not sanctioned by EdTA, that we have concerns about the event, and that we cannot assure the participants and parents that student safety will be protected.

Separately, we also have concerns about the secretive nature of this event, given the discussions held at Summit last year about the need for communication and transparency. We have heard from multiple sources that members were asked to keep it a secret.

Please confirm whether you will postpone the event. We commit to sharing further information in the future.

With respect,

EdTA Board of Directors

[List of Board of Directors]

Julie Theobald, Executive Director

CC: Scott Wilson and Erin Carr, recused due to Conflict of Interest

In the aftermath of this email, Dr. Carr filed a complaint in May 2021 against the EdTA defendants for breach of contract—concerning the separation agreement referenced above—and defamation per se largely based on the email.

{¶5} Several months later, the EdTA defendants filed a motion for judgment on the pleadings, arguing that Dr. Carr purported to bring an impermissible implied defamation claim, without actually quoting or attaching the email, and that Ohio does not permit implied defamation claims. In response, Dr. Carr largely argued that the EdTA defendants knew there was no safety risk if she attended the Zoom event, yet the "clear impact" of the email was defamatory since it conveyed that her attendance would endanger student safety. She further maintained that referencing an "investigation" suggested that the EdTA defendants had first-hand knowledge that substantiated the alleged risk to the participants of the conference, and that no innocent meaning can arise from the statement "that [the EdTA defendants] cannot assure the participants and parents that student safety will be protected." During the briefing on this motion, the EdTA defendants attached the full text of the email to their reply—via an affidavit of Ms. Theobald—acknowledging that the court may wish to convert their motion into a motion for summary judgment in order to consider the email. *See Daniely v. Accredited Home Lenders*, 8th Dist. Cuyahoga No. 99208, 2013-Ohio-4373, ¶ 6, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973) ("Unlike a motion for summary judgment where the parties are permitted to submit certain evidentiary materials for the court's review, the determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint.").

{¶6} Dr. Carr did not object to this procedural maneuver. At the hearing on the motion, both parties stipulated to converting the motion for judgment on the pleadings into a motion for summary judgment. After entertaining the arguments, the trial court granted the EdTA defendants' summary judgment motion as to Dr. Carr's defamation claim, concluding that the email was not defamatory as a matter of law.

{¶7} Dr. Carr then filed a motion for reconsideration, challenging the procedure by which the trial court converted the motion for judgment on the pleadings into a summary judgment motion. Opting for a belt and suspenders approach, the EdTA defendants responded by filing a subsequent motion for summary judgment—along with an opposition to the motion for reconsideration—to remedy any potential procedural error, while likewise insisting that the court had already appropriately resolved the case. Sifting through these filings, the trial court pointed to the parties' stipulation in open court to covert the motion, and it accordingly denied Dr. Carr's motion for reconsideration, and it also denied the EdTA defendants' subsequent motion for summary judgment as moot.

{¶8} In her appeal, Dr. Carr presents a single assignment of error, arguing that the trial court should not have granted summary judgment because the email was defamatory per se.

## II.

{¶9} We, of course, review a trial court's decision granting or denying summary judgment de novo. *Burdge v. Subvest 4, LLC*, 1st Dist. Hamilton No. C-060354, 2007-Ohio-1488, ¶ 12, citing *City of Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 5. "Summary judgment is

appropriate when the trial court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion." *Id.*, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d, 317, 327, 364 N.E.2d 267 (1977), and Civ.R. 56(C).

{¶10} The elements of a defamation cause of action are well-settled in Ohio: "A private person who brings a defamation claim must plead and prove: (1) a false and defamatory statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." *Martin v. Wegman*, 1st Dist. Hamilton Nos. C-180268 and C-180308, 2019-Ohio-2935, ¶ 9, quoting *Thomas v. Cohr, Inc.*, 197 Ohio App.3d 145, 2011-Ohio-5916, 966 N.E.2d 915, ¶ 24 (1st Dist.).

{¶11} With respect to the first element of defamation, "Ohio courts 'ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a "false statement" if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not "false." ' " *Drone Consultants, LLC v. Armstrong*, 12th Dist. Warren Nos. CA2015-11-107 and CA2015-11-108, 2016-Ohio-3222, ¶ 33, quoting *SEIU Dist. 1199 v. Ohio Elections Comm.*, 158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 18 (10th Dist.).

{¶12} A statement can be either defamatory per se or defamatory per quod, and this distinction matters in defining the plaintiff's burden. For a statement to

constitute defamation per se, "it must be defamatory upon the face of the statement," *Martin* at ¶ 10, citing *Becker v. Toulmin*, 165 Ohio St. 549, 556, 138 N.E.2d 391 (1956), which occurs when a statement "on its face * * * reflects upon [plaintiff's] character in such a manner that would cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." *Spitzer v. Knapp*, 5th Dist. Delaware No. 19 CAE 01 0006, 2019-Ohio-2701, ¶ 51, citing *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Contr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). A statement constitutes defamation per se "by the very meaning of the words used." *Heidel v. Amburgy*, 12th Dist. Warren No. CA2002-09-092, 2003-Ohio-3073, ¶ 30, citing *Moore v. P.W. Pub. Co.*, 3 Ohio St.2d 183, 188, 209 N.E.2d 412 (1965).

**{¶13}** By contrast, a statement becomes defamatory per quod "through interpretation, innuendo, or consideration of extrinsic evidence." *Martin*, 1st Dist. Hamilton Nos. C-180268 and C-180308, 2019-Ohio-2935, at ¶ 10. "Defamation per quod refer[s] to a communication that is capable of being *interpreted* as defamatory, i.e., it must be determined by the interpretation of the listener, through innuendo, as being either innocent or damaging." (Emphasis added.) *Spitzer* at ¶ 51, citing *Northeast Ohio Elite Gymnastics Training Ctr. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484 (9th Dist.). " '[I]f a statement is defamatory per quod, the plaintiff must plead and prove special damages,' though no such requirement exists for defamation per se." *Martin* at ¶ 10, quoting *Murray v. Knight-Ridder, Inc.*, 7th Dist. Belmont No. 02 BE 45, 2004-Ohio-821, ¶ 16.

**{¶14}** In this appeal, Dr. Carr pursues only a defamation per se claim, rather than defamation per quod. In fact, we do not see any defamation per quod claim

presented in the complaint, nor any allegation of special damages either. And the email that we quoted above represents the only basis that Dr. Carr relies upon in order to establish defamation per se.

{¶15} To prevail on appeal, Dr. Carr seeks to convince us that defamation by implication represents a subset of defamation per se. Rather than arguing that the relevant language is defamatory on its face, she emphasizes that the language is "defamatory by implication" or by "insinuation." But we have difficulty distinguishing this approach from defamation per quod, and indeed extant Ohio authority seems to reject Dr. Carr's legal position: "Ohio does not recognize defamation by implication," *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 52 (8th Dist.); *Krems v. Univ. Hosps. of Cleveland*, 133 Ohio App.3d 6, 12, 726 N.E.2d 1016 (8th Dist.1999), at least independent of a defamation per quod claim.

{¶16} While Dr. Carr does point in her appellate brief to a handful of cases that seem to discuss defamation by implication, closer inspection of these authorities indicates that they align such a claim with defamation per quod (albeit not always with precision). *See Cogent Solutions Group, LLC v. Brown*, S.D.Ohio No. 2:12-CV-665, 2013 U.S. Dist. LEXIS 165265, ¶ 40 (Nov. 20, 2013) (noting that defamation claim was nearly frivolous but declining to award sanctions because "Ohio law does allow for a defamation claim based on implication, or 'innuendo' "); *Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484, at ¶ 10 (discussing defamation per quod and per se distinction and noting "that both parties fail to support a substantial portion of their respective arguments with citations to case law"); *Mucci v. Dayton Newspapers*, 71 Ohio Misc.2d 71, 77, 654 N.E.2d 1068 (C.P.1995) ("[I]t is legally possible for individual, nondefamatory, even true facts to be positioned or laid out in such a

9

fashion that, by implication or innuendo, they become [defamatory] either *per se* or *per quod*.") (Emphasis sic.). Indeed, if defamation by implication fell within the purview of defamation per se, it would effectively obliterate the distinction between per se and per quod.

{¶17} Although we could potentially imagine a scenario where the only implication from a statement was a defamatory one, we fail to see the distinction between defamation by "implication" or "insinuation" as presented by Dr. Carr in this appeal, and how Ohio typically treats defamation per quod: "When a statement is only defamatory through interpretation, innuendo, or consideration of extrinsic evidence, then it is defamatory per quod and not defamatory per se." *Dundee v. Philpot*, 1st Dist. Hamilton No. C-180280, 2019-Ohio-3939, ¶ 68.

{¶18} Bolstering this conclusion, the only specific aspect of the email that Dr. Carr challenges on appeal involves the following language: "we have concerns about the event, and that we cannot assure the participants and parents that student safety will be protected."[1] Needless to say, that language does not state that Dr. Carr did anything wrong or harmful (nor does it even identify her). Rather, it expresses defendants' subjective "concerns" about the event and indicates that they will not take certain measures in the future. *See Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 23 (8th Dist.), quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993) (" '[I]f it is plain that the speaker is expressing a subjective

---

[1] We must also point out that the email nowhere identifies Dr. Carr by name. But "[a] plaintiff need not have been specifically named in a libelous statement to have been defamed." *Gosden v. Louis*, 116 Ohio App.3d 195, 218, 687 N.E.2d 481 (9th Dist.1996), citing *Shimola v. Cleveland*, 65 Ohio App.3d 457, 462, 584 N.E.2d 774 (8th Dist.1989). As a result, courts must consider "whether recipients of the communication understood it to refer to that person." *Id.* We assume, without deciding, that the email sufficiently references Dr. Carr for defamation purposes.

view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.' "); *see also Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 63, citing *Block v. Block*, 165 Ohio St. 365, 377, 135 N.E.2d 857 (1956) ("[A] party cannot predicate fraud on predictions or projections relating to future performance; rather we have long recognized that to be actionable, a misrepresentation must involve a matter of fact that relates to the past or present."). That is why Dr. Carr necessarily resorts to "implication" and "insinuation" to posit that the language should be translated to mean that she is a threat to child safety.

{**¶19**}  Beyond the points above, we see two additional problems with this theory.  First, we cannot consider a statement myopically; rather, we must evaluate whether the statement is defamatory based on the totality of the email.  *See Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 79, citing *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, ¶ 12 (" 'In determining whether a statement is defamatory as a matter of law, a court must review * * * the totality of the circumstances' and by 'read[ing] the statement[] * * * in the context of the entire [publication] to determine whether a [reasonable] reader would interpret [it] as defamatory.' ").  Reading through the entire email, the EdTA defendants convey that they have received certain information that they are investigating, and because they want time to complete the investigation, they will not condone the upcoming event.

{**¶20**}  Second, and relatedly, when we consider the entirety of the email, we perceive an innocent construction of it: "Under the innocent construction rule, if a statement is capable of both a defamatory and innocent meaning, the innocent

meaning must be adopted and the defamatory one rejected. * * * If a statement has more than one interpretation, it cannot be defamatory per se." *See Murray*, 7th Dist. Belmont No. 02 BE 45, 2004-Ohio-821, at ¶ 32, citing *Sethi v. WFMJ Television, Inc.*, 134 Ohio App.3d 796, 804, 732 N.E.2d 451 (7th Dist.1999), and *Sullivan v. Tucci*, 69 Ohio App.3d 20, 22-23, 590 N.E.2d 13 (10th Dist.1990). Here, we see at least two interpretations of the featured statement in the email: (1) the EdTA defendants need additional time to complete their investigation and they will take no responsibility for a conference arising mid-investigation; and (2) Dr. Carr represents a threat to child safety based on her prior conduct. The first construction represents an innocent interpretation of the email, which defeats any claim of defamation per se.

{¶21} By resorting to "implication" and "insinuation," Dr. Carr effectively acknowledges that the statement is not defamatory "by the very meaning of the words used," so this email, given its overall context, cannot constitute defamation per se. *See Heidel*, 12th Dist. Warren No. CA2002-09-092, 2003-Ohio-3073, at ¶ 30, citing *Moore*, 3 Ohio St.2d at 188, 209 N.E.2d 412.

{¶22} We certainly appreciate Dr. Carr's angst when she saw this email, and the EdTA defendants should have been more judicious and thoughtful in their correspondence. But the standard for defamation is a high one, lest every slight or offensive remark be rendered actionable. Under the governing standards for Ohio defamation law described above, we conclude that Dr. Carr failed to establish a viable defamation per se claim on the state of this record. We express no opinion as to whether the email may have constituted defamation per quod because no such theory was pursued in this appeal.

*         *         *

12

{¶23}   In light of the foregoing analysis, we overrule Dr. Carr's assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER, J.,** concurs.
**ZAYAS, P.J.,** concurs in judgment only.

Please note:

The court has recorded its entry on the date of the release of this opinion.